UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MARK FRAZIER,

    Plaintiff,

v.                                                         Case No. 8:20-cv-1736-CPT

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,[1]

    Defendant.
_____/

**O R D E R**

The Plaintiff seeks judicial review of the Commissioner's denial of his claim for Supplemental Security Income (SSI). For the reasons discussed below, the Commissioner's decision is reversed, and the case is remanded.

I.

The Plaintiff was born in 1983, has some lower level education, and has past relevant work experience as a yard worker and landscape specialist. (R. 18, 37). In November 2017, the Plaintiff applied for SSI, alleging disability as of November 2015 due to depression, bipolar disorder, carpal tunnel syndrome, and a cyst in his brain.

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Federal Rule of Civil Procedure 25(d), Ms. Kijakazi is substituted for Commissioner Andrew M. Saul as the Defendant in this suit.

(R. 95). The Social Security Administration (SSA) denied the Plaintiff's application both initially and on reconsideration. (R. 106, 126).

At the Plaintiff's request, an Administrative Law Judge (ALJ) conducted a hearing on the matter in February 2019. (R. 30–73, 146–47). The Plaintiff was represented by counsel at that proceeding and testified on his own behalf. (R. 30, 35–66). A vocational expert (VE) also testified. (R. 66–73).

In a decision issued in October 2019, the ALJ found that the Plaintiff: (1) had "not engaged in substantial gainful activity since November 30, 2017, the application date[;]" (2) had the severe impairments of obesity, bipolar disorder, degenerative disc disease, and degenerative joint disease of the knee; (3) did not, however, have an impairment or combination of impairments that met or medically equaled the severity of any of the listings;[2] (4) had the residual functional capacity (RFC) to perform a restricted range of light work with some exertional and mental limitations; and (5) based on the VE's testimony, could not engage in his past relevant work but, despite being illiterate, could perform other jobs that exist in significant numbers in the national economy—namely, small parts assembler, hand packager, and electronics worker. (R. 10–20). In light of these findings, the ALJ concluded that the Plaintiff was not disabled. (R. 20).

---

[2] The listings are found at 20 C.F.R. Pt. 404, Subpt. P, App'x 1, and catalog those impairments that the SSA considers significant enough to prevent a person from performing any gainful activity. 20 C.F.R. § 404.1520(a)(4)(iii). When a claimant's affliction(s) match an impairment on the list, the claimant is automatically entitled to disability benefits. *Id.*; *Edwards v. Heckler*, 736 F.2d 625, 628 (11th Cir. 1984).

The Appeals Council denied the Plaintiff's subsequent request for review. (R. 1–6). Accordingly, the ALJ's decision became the final decision of the Commissioner.

II.

The Social Security Act (the Act) defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 416.905(a).³ A physical or mental impairment under the Act "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

To determine whether a claimant is disabled, the Social Security Regulations (Regulations) prescribe "a five-step, sequential evaluation process." *Carter v. Comm'r of Soc. Sec.*, 726 F. App'x 737, 739 (11th Cir. 2018) (per curiam) (citing 20 C.F.R. § 404.1520(a)(4)).⁴ Under this process, an ALJ must assess whether the claimant: (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals one of the listed impairments; (4) has the RFC to engage in his past relevant work; and (5) can perform other jobs in the national economy given his RFC, age, education, and work experience. *Id.* (citing *Phillips v.*

---

[3] Unless otherwise indicated, citations to the Code of Federal Regulations are to the version in effect at the time of the ALJ's decision.
[4] Unpublished opinions are not considered binding precedent but may be cited as persuasive authority. 11th Cir. R. 36-2.

*Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004); 20 C.F.R. § 416.920(a)(4)).  Although the claimant has the burden of proof through step four, the burden temporarily shifts to the Commissioner at step five.  *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1279 (11th Cir. 2020) (quoting *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)); *Sampson v. Comm'r of Soc. Sec.*, 694 F. App'x 727, 734 (11th Cir. 2017) (per curiam) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)).  If the Commissioner carries that burden, the claimant must then prove he cannot engage in the work identified by the Commissioner.  *Goode*, 966 F.3d at 1279.  In the end, "the overall burden of demonstrating the existence of a disability . . . rests with the claimant."  *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018) (quoting *Doughty v. Apfel*, 245 F.3d 1274, 1280 (11th Cir. 2001)).

A claimant who does not prevail at the administrative level may seek judicial review in federal court provided the Commissioner has issued a final decision on the matter after a hearing.  42 U.S.C. § 405(g).  Judicial review is limited to determining whether the Commissioner applied the proper legal standards and whether the decision is supported by substantial evidence.  *Id.*; *Hargress v. Soc. Sec. Admin., Comm'r*, 883 F.3d 1302, 1305 n.2 (11th Cir. 2018) (per curiam) (citation omitted).  Substantial evidence is "more than a mere scintilla" and is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Biestek v. Berryhill*, 587 U.S. ___, 139 S. Ct. 1148, 1154 (2019) (citations and quotations omitted).  In evaluating whether substantial evidence supports the Commissioner's decision, a court "may not decide the facts anew, make credibility determinations, or re-weigh the evidence."

*Carter*, 726 F. App'x at 739 (citing *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005)); *see also Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). While a court will defer to the Commissioner's factual findings, it will extend no such deference to her legal conclusions. *Keel-Desensi v. Berryhill*, 2019 WL 1417326, at *2 (M.D. Fla. Mar. 29, 2019) (citing *Keeton v. Dep't of Health & Hum. Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994)).

III.

The Plaintiff's sole argument on appeal is that the ALJ failed to satisfy his obligation under Social Security Ruling (SSR) 00-04p to address an apparent discrepancy between the VE's statements at the hearing and the Dictionary of Occupational Titles (DOT)[5] relative to the three occupations identified by the VE. (Doc. 22 at 4–11). Upon careful review of the parties' submissions and the pertinent portions of the record, the Court finds that the Plaintiff's challenge has merit.

It is now settled law that, pursuant to SSR 00-4p, an ALJ is required to identify and resolve any apparent inconsistency between DOT data and VE testimony. *Washington*, 906 F.3d at 1362; *see also* SSR 00-4p, 2000 WL 1898704 (S.S.A. Dec. 4, 2000). As the Eleventh Circuit noted in *Washington*, "this duty is not fulfilled simply by taking the VE at [her] word that [her] testimony comports with the DOT." 906

---

[5] The DOT is "an extensive compendium of data about the various jobs that exist in the United States economy, and includes information about the nature of each type of job and what skills or abilities they require." *Washington*, 906 F.3d at 1357 n.2.

F.3d at 1362. Rather, the ALJ has an "affirmative obligation" to discern and reconcile any such apparent conflicts and to set forth his reasons for doing so. *Id.*

An "apparent conflict" under SSR 00-4p is "more than just a conflict that is made apparent by the express testimony of the VE." *Id*. at 1365. Instead, "[a]t a minimum, a conflict is apparent if a reasonable comparison of the DOT with the VE's testimony suggests that there is a discrepancy, even if, after further investigation, that turns out not to be the case." *Id*. "Apparent" in this context is "taken to mean apparent to an ALJ who has ready access to and a close familiarity with the DOT." *Id*. at 1366.

The ALJ's duty to take notice of and to resolve apparent inconsistencies between the DOT and VE testimony exists both during and after the hearing and does not depend on whether they are raised by a party. *Id*. at 1363. "The failure to properly discharge this duty means that the ALJ's decision . . . is not supported by substantial evidence." *Id.* at 1362.

In this case, the ALJ engaged in a colloquy with the VE at the hearing as to whether the Plaintiff could perform other jobs (besides his past relevant work) found in the national economy. (R. 66–70). In response to the ALJ's inquiries, the VE asserted that an individual with the Plaintiff's age, education, work experience, and RFC could engage in the representative occupations of small parts assembler, hand packager, and electronics worker. (R. 68). The VE also attested that, with the exception of some distinctions not relevant here, her testimony comported with the DOT. (R. 70).

6

The Plaintiff's attorney then conducted his own examination of the VE. During that examination, counsel asked the VE if any of the specified jobs would "require any kind of skill in reading and writing[.]" (R. 71). The VE responded, "in my opinion, those jobs would not require any extensive skill in reading or writing. Someone who's illiterate would be able to perform those jobs." (R. 72).

In his decision, the ALJ relied upon the VE's opinion at step five in concluding that the Plaintiff could engage in the occupations identified by the VE. (R. 19). In doing so, the ALJ stated in conclusory fashion that, "[p]ursuant to SSR 00-4p, . . . the [VE's] testimony [was] consistent with the information contained in the . . . DOT." *Id*.

The Plaintiff now argues that, as a result of his illiteracy, there is a "blatant" and "major" discrepancy between the VE's testimony and the DOT, which the ALJ failed to resolve. (Doc. 22 at 4–11). In support of this contention, the Plaintiff notes that each of the three occupations denominated by the VE have assigned language levels that impose certain language requirements regarding a claimant's ability to read, write, and speak. *Id.* at 10–11. In particular, the position of small parts assembler (language level one) necessitates that an individual, *inter alia*, "[r]ecognize [the] meaning of 2,500 (two- or three-syllable) words," "[r]ead at [a] rate of 95–120 words per minute," and "[p]rint simple sentences containing [a] subject, verb, and object," DOT #706.684-022; the position of hand packager (language level one) states that an individual, *inter alia*, possess a "[p]assive vocabulary of 5,000–6,000 words," have the capacity to "[r]ead at rate of 190–215 words per minute," and be able to "[w]rite compound and

7

complex sentences, using cursive style, proper end punc[t]uation, and employing adjectives and adverbs," DOT #559.687-074; and the position of electronics worker (language level two) requires that an individual, *inter alia*, have a "[p]assive vocabulary of 5,000–6,000 words," have the capability to "[r]ead at rate of 190–215 words per minute," and be able to "[w]rite compound and complex sentences, using cursive style, proper end punc[t]uation, and employing adjectives and adverbs," DOT #726.687-010. The Plaintiff further observes that, while all three of these jobs demand a claimant have some ability to read and write, the fact that he is illiterate means he cannot satisfy these criteria, at least on their face. Indeed, the applicable Regulation defines illiteracy as "the inability to read or write" and adds that a person is illiterate if he "cannot read or write a simple message such as instructions or inventory lists even though the person can sign his or her name." 20 C.F.R. § 416.964(b)(1). The Plaintiff has a point.

The question of whether an ALJ has breached his duty to identify, resolve, and explain conflicts "boils down to whether the conflict was an apparent one." *Washington*, 906 F.3d at 1366 (internal quotations omitted). As alluded to above, a conflict is made apparent by either the VE or a party expressly identifying it or if "a reasonable comparison of the DOT with the VE's testimony suggests that there is a discrepancy." *Id.* at 1363, 1365.

There is little question here that there was at least an apparent conflict between the VE's testimony about the jobs the Plaintiff could perform despite his illiteracy and the language requirements of those occupations as set forth in the DOT. This inconsistency is evident from a reasonable comparison of the DOT with both the VE's

8

statements at the hearing and the ALJ's findings. Although the DOT specifies that each job necessitates some level of reading and writing ability, the VE tacitly acknowledged and the ALJ expressly determined that the Plaintiff was unable to do either. *Torres v. Saul*, 2021 WL 280066, at *4 (M.D. Pa. Jan. 4, 2021) ("[G]iven that the ALJ determined that [the claimant] is illiterate and the VE testified that [the claimant] can perform the jobs which, according to the DOT, require a minimum level of proficiency in English, there is a conflict.") (internal quotation marks and citation omitted).

The discrepancy between the DOT and the VE's testimony was also made apparent by the question Plaintiff's counsel posed to the VE regarding whether any of the identified jobs would "require any kind of skill in reading and writing[.]" (R. 71). In fact, it was sufficiently obvious to the VE because she seemingly grasped the thrust of counsel's question by responding that even "[s]omeone who's illiterate would be able to perform those jobs." (R. 72).

As discussed previously, where, as in this case, an inconsistency between the VE's testimony and the DOT is at least apparent, an ALJ must provide "a reasonable explanation for the discrepancy, and detail in his decision how he resolved the conflict." *Washington*, 906 F.3d at 1356; *see also Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1321 (11th Cir. 2021) (noting that an ALJ has a duty to identify any inconsistencies, explain them, and "detail in the decision how that discrepancy was resolved") (citation omitted). The ALJ did not do so here. Indeed, not only did the ALJ fail to provide a "reasonable explanation" for the discrepancy and describe how

9

he disposed of that conflict, he did not even mention the inconsistency at all. As a result, reversal and remand is warranted. *See Matthews v. Berryhill*, 2018 WL 735413, at *4–5 (D. S.C. Jan. 23, 2018) (reversing and remanding a case where a claimant was functionally illiterate, the jobs identified by the VE and cited by the ALJ required some level of literacy, and ALJ failed to explain why he deviated from the DOT's requirements); *Burton v. Astrue*, 2012 WL 1184425, at *5 (D. Me. Apr. 6, 2012) (directing that the case be reversed and remanded where "[t]he [claimant]'s reading capacity, as found by the [ALJ] and conveyed to the [VE], clearly conflicts with the reading ability that the DOT indicates is necessary to perform the jobs at issue").

Contrary to the Commissioner's assertion (Doc. 22 at 13–15), the fact that the VE claimed—without any explanation—that an illiterate individual could engage in the three identified jobs did not absolve the ALJ of his obligation to reconcile this discrepancy. SSR 00-4p makes clear that VE testimony does not "automatically trump" the DOT. 2000 WL 1898704, at *2. Instead, the duty falls to the ALJ under SSR 00-4p to set forth an adequate justification for relying on the VE's testimony when it is at odds with the DOT. *Buckwalter*, 5 F.4th at 1321; *Washington*, 906 F.3d at 1356.

Here, as discussed above, the ALJ did not reference at the hearing or in his decision that there was a conflict between the VE's testimony and the DOT, much less provide a sufficient rational of how he resolved that discrepancy. In the absence of any such explication, the Court cannot conduct a meaningful review of the ALJ's decision. *Hernandez v. Comm'r of Soc. Sec.*, 2021 WL 3617405, at *4 (M.D. Fla. Aug. 16, 2021) (reversing and remanding the Commissioner's decision where the court

could not engage in a meaningful review of the ALJ's determination that the claimant could perform the specified work despite his illiteracy); *see also Pinto v. Massanari*, 249 F.3d 840, 847 (9th Cir. 2001) ("Here the ALJ, although noting [the claimant]'s [illiteracy] in both his findings of fact and hypothetical to the [VE], failed to explain how this limitation related to his finding that [the claimant] could perform her past relevant work as generally performed.").

The Commissioner's reliance on *Rivera-Negron v. Astrue*, 2013 WL 5823713 (E.D. Pa. Oct. 30, 2013) in this regard is misplaced. While it is true the court in *Rivera-Negron* pointed to the fact that the VE was not questioned about a discrepancy between her testimony and the DOT as a basis for remanding the matter, the court also predicated its ruling that remand was warranted on the ALJ's failure to set forth the reasons why he "credited the VE's testimony despite the conflict with the DOT." *Id.* at *5 (citing *Pinto*, 249 F.3d at 847).

The Court is likewise unpersuaded by the Commissioner's argument that finding an apparent conflict between the VE's testimony and the DOT in this case is tantamount to determining that all illiterate individuals are *per se* disabled. As another court observed in rejecting a similar contention:

> The [claimant's] reading capacity, as found by the [ALJ] . . . , clearly conflicts with the reading ability that the DOT indicates is necessary to perform the jobs at issue. That the DOT does not take into account illiteracy, and that illiteracy does not preclude all work, may constitute good reasons to deviate from the DOT, but they do not alter the fundamental fact that there is a clear conflict between the vocational testimony at issue and the demands of the relevant jobs as described in the DOT. The [C]ommissioner, in promulgating SSR 00–4p, did not see

11

>fit to include a carve-out for claims involving illiteracy. Rather, he broadly decreed [that] . . . [w]hen there is an apparent unresolved conflict between VE . . . evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE . . . evidence to support a determination or decision about whether the claimant is disabled.

*Burton*, 2012 WL 1184425, at *5–6 (internal quotation marks and citation omitted).

In short, despite what the Commissioner suggests, the ALJ was not automatically required to conclude that there were no jobs available to the Plaintiff because he was illiterate and because the identified jobs necessitated some level of literacy. The ALJ was instead duty-bound to identify this conflict and to detail how he reconciled it before being able to rely on the VE's testimony. *Buckwalter*, 5 F.4th at 1321.

To the extent that a harmless error analysis applies here, it does not save the ALJ's disability determination. As noted previously, the ALJ did not acknowledge the above conflict (either at the hearing or in his decision), much less explain how it was resolved. And the only evidence in the record arguably even alluding to the impact of the Plaintiff's illiteracy on his ability to perform the three jobs at issue is the VE's conclusory statement that it would have no effect. Because there is insufficient evidence in the record demonstrating that the ALJ discharged his duty to identify, explain, and resolve this discrepancy, this failure cannot be deemed harmless. *See Washington*, 906 F.3d at 1366 ("Any explanation for how and why [the ALJ] concluded that [the claimant] could work as a bagger and a table worker was de minimis, and the ALJ asked nothing more to elicit a fuller explanation. We, therefore,

have no basis . . . on which to conclude that the ALJ adequately resolved any possible discrepancy in spite of his failure to even acknowledge the conflict.") (citation omitted).

In light of the above, the ALJ should reassess the entire record on remand, providing sufficient reasons and readily identifiable evidentiary support for his decision. *Diorio v. Heckler*, 721 F.2d 726, 729 (11th Cir. 1983) (citation omitted).

IV.

For the foregoing reasons, it is hereby ORDERED:

1. The Commissioner's decision is reversed, and the case is remanded for further proceedings before the Commissioner consistent with this Order.

2. The Clerk of Court is directed to enter Judgment in the Plaintiff's favor and to close the case.

3. The Court reserves jurisdiction on the question of attorney's fees and costs pending a further motion that conforms to the District's Standing Order. *See In re: Administrative Orders of the Chief Judge*, No. 3:21-mc-1-TJC (Doc. 43) (Dec. 7, 2021).

SO ORDERED in Tampa, Florida, this 30th day of March 2022.

*[signature]*
HONORABLE CHRISTOPHER P. TUITE
United States Magistrate Judge

Copies to:
Counsel of record

13